Plaintiff instituted this suit against L.M. Debose on a promissory note executed by defendant to plaintiff of date March 5, 1938, and made payable June 1, 1938, for the sum of $450 with interest at the rate of 8% per annum from maturity until paid and providing for 10% attorney's fees upon both principal and interest if placed in the hands of an attorney for collection. This suit was instituted on November 19, 1940, long after the due date of said note.
Defendant admits executing the note and set up the following defense:
"5. That respondent was approached by J.W. Tatum, an officer and employee of the plaintiff herein at the time that he affixed his signature to the note upon which this suit is brought.
"6. That as an officer and employee of the plaintiff, the said J.W. Tatum requested your respondent to affix his signature to the said note, advising him that it was an accommodation to the plaintiff herein as a matter of bookkeeping for the Bank, which is plaintiff herein.
"7. That your respondent received no consideration whatsoever for the said note and executed it only as an accommodation to the plaintiff herein through its proper authorized and constituted agent, J.W. Tatum.
"8. That the plaintiff herein is the original payee in the said note and hence that respondent is entitled to set up this his defense of lack and failure of consideration for the execution of this note.
"9. That neither your respondent nor anyone else other than the plaintiff in this suit received any benefit from the execution of the said note and that the plaintiff herein was accommodated by its execution.
"10. That immediately upon being notified by the plaintiff herein that he should pay the said note, which notice was more than two years ago, your respondent went to the officers and employees of plaintiff, explained to them in full and in detail the manner and circumstances under which the note was signed by him and advised them that he denied any and all liability upon the instrument.
"11. That after this full disclosure and denial of liability the plaintiff herein did not take any further action to assert any claim against your respondent until less than one month before the filing of this suit.
"12. That this conduct on the part of the plaintiff herein was designated and calculated to and would make respondent feel that with the explanation which he had given plaintiff herein would not feel that the note herein sued upon represented any real obligation and that through this your respondent was lulled into a feeling of security. *Page 387 
"13. That for the reasons as above set forth plaintiff herein is estopped to assert any claim for liability under the note herein sued upon and that respondent categorically pleads this equitable estoppel.
"Wherefore, respondent prays that the petition of the plaintiff herein be dismissed at its cost and that it be decreed by this Honorable Court that the note herein sued upon does not represent any real obligation of your respondent.
"Respondent further prays for all orders or decrees, necessary or proper in the premises and for general and equitable relief."
On trial of the case below there were but two witnesses, the present president of the bank and the defendant. Upon conclusion of the taking of testimony the lower court rejected plaintiff's demands. Plaintiff applied for a new trial and in refusing same the lower court gave in writing its reasons for its decision and refusal of the motion for a new trial. The application for a new trial alleged no reasons other than that the judgment was contrary to the law and the evidence.
The written reasons given by the lower court are as follows:
"Plaintiff sued defendant on a promissory note dated March 5, 1938, payable June 1, 1938, for the sum of $450.00 with interest and attorney's fees, and which note is made payable to plaintiff. The defendant pleaded want of consideration as an answer to the plaintiff's demands. The case was tried and at the conclusion of the evidence the Court rendered judgment in favor of defendant rejecting plaintiff's demands. An application for rehearing has been filed on the part of plaintiff.
"The evidence in the case in short is that the defendant did not borrow any money from the Bank at the time of the execution of this note or at the time of giving a previous note of which this note is supposed to be a renewal. Defendant testified that the former President of the Bank requested him to execute this note (or the former note) and that it would not cost him (defendant) anything; that he would take care of it; that later the former President of plaintiff Bank came to defendant's home in Rodessa, Louisiana, and requested defendant to sign the note here sued on and told defendant that he had paid $100.00 on the other note, and the present note was signed under the same circumstances as the first note. (The former President of the Bank is no longer President of the Bank, having been convicted for `kiting' checks.) As stated the defendant says that he got nothing from the Bank on the note and does not know whether anyone else did or not.
"The present President of the Bank, who was Cashier thereof at the time of the execution of these notes, testified for the plaintiff, and said that Mr. Tatum (the former President of the Bank) borrowed considerable money from the Bank at various times and never gave the Bank notes signed by other parties for money he borrowed, but gave chattel mortgages when borrowing money from the Bank. This witness was not asked one question as to whether defendant secured any money or other things from the Bank at the time of the execution of the notes, so we have the uncontradicted testimony of defendant that he received nothing for the note and the uncontradicted testimony of the President of the Bank that Mr. Tatum, the former President of the Bank, did not obtain money from the Bank on notes signed by other parties.
"Counsel for plaintiff in his application for a rehearing has by brief argued the law relative to agreements made by a president of the Bank to a person signing a note to the effect that he would not have to pay same. We did not take this phase of the question into consideration at the time of rendering judgment as we did not believe defendant in the case on the basis of the agreement said to have been made between Mr. Tatum, the President of the Bank, and the defendant. The basis of our decision was on the facts showing want of consideration.
"It matters not what the agreement between the parties was at the time of the execution of the note, the only question here involved is — Did the Bank give a consideration for the note? The defendant said it did not and the Bank does not offer any evidence to show that it did. It is true that the Bank offered in evidence the note sued on, which is prima facie evidence only and which was overcome by the positive testimony of the defendant, which remains uncontradicted. The ledger sheet showing defendant's account was charged with this note makes no proof that the Bank gave a consideration for the note. While the Bank in making a charge against defendant for the note, in order to keep its *Page 388 
books in balance, had to give someone credit for the amount. Had they given credit to defendant's account or given credit to Mr. Tatum's account, it could have been easily shown. It was the Bank's duty to show that it paid a consideration for the note to offset the defendant's testimony that there was no consideration paid, and they did not do so.
"We think the judgment rendered is in accord with the law and the evidence relevant to the issue involved and, for the reasons assigned, the application for a new trial and rehearing is overruled."
Judgment was signed in accordance with said reasons and the plaintiff perfected an appeal to this court.
In this court appellant contends that the note was signed by defendant as an accommodation to Mr. Tatum, the then president of the bank. If this were true there could be no doubt as to the liability of defendant on the note but there is no testimony to substantiate this contention. Defendant testified that he signed the note to accommodate the plaintiff bank and not Mr. Tatum; that he was under no obligations to Mr. Tatum and was not a personal friend of his. Furthermore, it is shown by the plaintiff's present president, who was then cashier, that the note was not used by Tatum as collateral in borrowing from the bank. The record fails to disclose that defendant, Tatum or anyone else ever received credit for the amount of the note or any part of it, and it is not even claimed by plaintiff that defendant received any money or other benefits from executing the note. It is not shown that any use was ever made of the note by Tatum. If it had been shown that Tatum used the note to cover his shortage with the bank, if such existed, some weight could be attached to the contention that the note was signed by defendant to accommodate Tatum personally but this has not been shown. According to the record as made up, the note was executed to plaintiff and no one was ever given any consideration for it. It merely remained in the bank until this suit was filed.
We recognize the well-established rule that every negotiable instrument is deemed prima facie to have been issued for a valuable consideration and that every person whose signature appears thereon to have become a party thereto for value (Act No. 64 of 1904 § 24) and that absence of consideration is a matter of defense. But when defendant denies under oath that he received any consideration and the ledger sheet of the bank showing his account fails to show any credit and no one testified that any consideration was given defendant for the note, the burden shifts to the plaintiff bank to show the consideration, if any there was. In this case the bank has failed to meet that burden.
The judgment of the lower court is correct and is affirmed with costs.
TALIAFERRO and HAMITER, JJ., concur.